LAND, Justice.
 

 Paul Mariana, plaintiff and appellee, entered into a written contract with the defendant, the Eureka Homestead Society, whereby it agreed to sell, and plaintiff agreed to purchase, certain real estate in the city of New Orleans, for the price of $10,000.
 

 Plaintiff paid the sum of $5,200 at the time -of - the execution of the contract, leaving a balance of $4,800, to be paid within the time stipulated in the contract.
 

 Plaintiff has refused to carry out the contract on the ground that the title of the Eureka Homestead Society to the property is suggestive of serious litigation.
 

 F. J. Whitehead, Charles H. McDonald, and Octave H. Levert were the owners in indivisión, in the proportion of an undivided -one-third each, of the property, the title of which is the subject of this litigation.
 

 On September 9, 1921, the three co-owners agreed to sell the property to Isidore Jeffer for the sum of $16,500.
 

 Before the consummation of the agreement, Octave Levert died, leaving a widow and eight children, three of whom were majors and five were minors. Levert was a resident of West Baton Rouge parish, and his succession was opened there under probate No. 1258 of the docket of the Twenty-First judicial district court.
 

 On December 19, 1921, his widow was put into possession as surviving spouse in community and owner of one-half and as legatee of the disposable portion of one-third of Levert’s property. The children were recognized and put into possession of the remainder of Levert’s property, subject to the usufruct in favor of their mother, thus making them co-owners of the property;
 

 On the same day, December 19, 1921, Charles H. McDonald and Francis J. Whitehead filed suit in the Twenty-First judicial district against the widow of Levert and her three major and five minor children, one of whom is still a minor, setting up the contract of September 9, 1921, as the basis of their action, and asking judgment in their favor, commanding and decreeing the specific performance of the contract with Isidore Jeffer to convey to him this property.
 

 Plaintiffs prayed for the appointment of a tutor ad hoc to represent the minor heirs;, the mother not having qualified as their tutrix until January 17, 1922.
 

 Charles J. Laycock was appointed tutor ad hoc to represent the minor heirs. On December 20, 1921, the tutor ad hoc filed an answer on behalf of the minors. On Decern
 
 *130
 
 her 21, 1921, a family meeting was convoked in behalf of the minors, authorizing and directing specific performance of the contract entered into between Whitehead, McDonald, Levert, and Jeffer.
 

 On December 22, 1921, judgment was rendered against defendants and the minors, in favor of plaintiffs, ordering the specific performance of the contract in question.
 

 On the same day, the tutor ad hoc of the minors executed a power of attorney in favor of Mrs. Levert, authorizing her to appear before a notary public and execute the act of sale to Isidore Jeffer, which was done accordingly.
 

 The chain of title of the Eureka Homestead Society, attacked by plaintiff as suggestive of serious litigation, is as follows:
 

 (a) Isidore Jeffer sold to D. D. Cossouto by authentic act.
 

 (b) Cossouto sold to Marx Jeffer, by authentic act, based on sheriff’s adjudication at public auction in proceedings No. 165962 of the docket of the civil district court.
 

 (c) Marx Jeffer sold to Eureka Homestead Society, and reacquired the same day by authentic acts.
 

 (d) Eureka Homestead Society foreclosed against Marx Jeffer, No. 192350 of the docket of the civil district court, and acquired at sheriff’s public adjudication.
 

 Plaintiff urges the following defects in title:
 

 (a) That no citation was ever issued or served upon the tutor ad hoc representing the minor heirs of Levert in the proceedings for specific performance brought by Charles. H. McDonald and F. J. Whitehead in the Twenty-First judicial district court for the parish of West Baton Rouge against the widow in community and the heirs of Levert.
 

 (b) That the tutor ad hoc had no authority to delegate his powers to Mrs. Levert,' surviving widow in community, to appear before a notary public and execute the act of sale to Isidore Jeffer.
 

 ■ The present minor has brought no action. She is no party to this suit in any way. Her interest was one seventy-second in the entire .property. The five minors’ share was $1,111.11, which is the exact amount receipted for by the tutrix to the clerk of court for minors’ money deposited under the judgment of court in its registry.
 

 Plaintiff has produced the record of proceedings in the suit for specific performance, and contends that the mere fact that the citation is omitted therefrom is sufficient proof that no citation was issued or served upon the tutor ad hoc for the minors. In our opinion, the fact alone that no return could be found among the papers of the suit showing that the tutor ad hoc was ever cited is not sufficient of itself, without other proof, to destroy the presumption that there had been a legal citation.
 

 More than eleven years has passed since the judgment ordering specific performance was rendered, and the property has passed through various hands to its present owner through private and public sales.
 

 Judge Oarruth, who rendered the judgment in the specific performance proceedings in the district court for the parish of West Baton Rouge, is still alive. Lefebvre, the clerk
 
 *132
 
 of court, is alive. The costs books of the sheriff and the clerk are presumptively in existence, and the plaintiff could have produced more evidence, had it been favorable. But he produced nothing, except the record showing the bare absence of citation. This was not sufficient to shift the burden of proof to defendant. Judicial proceedings are presumed to be regular until the' contrary is shown. 3 Louisiana Digest,- verbo Evidence, § 46, p. 130.
 

 As said in Spears v. Spears, 173 La. 300, 136 So. 614, 616: “There is a presumption that the judgment rendered is valid. This presumption, however, like all other presumptions, may be overcome by proof. It will bo observed that, in the acknowledgment, there is no mention of an acknowledgment, or acceptance, of service of citation. The original record in the case contains no citation;
 
 the clerk’s charge book
 
 shows no charge for either a copy of the petition or for the issuance of citation', the
 
 sheriff’s charge book
 
 shows no charge for the sendee of either, and there is nothing in the record of this appeal, indicating that a copy of the petition was ever made for service, or that citation was ever issued. This evidence was ample to shift the burden of evidence to defendants.” (Italics ours.)
 

 It would be a most dangerous doctrine for this court to announce that the fact alone that no return could be found among the papers of the suit sh,owing that the tutor ad hoc or the defendant was ever cited would be
 
 sufficient of itself, without other proof, to destroy the presumption that there had been a legal citation.
 

 As said in Mithoff v. Dewees, 9 La. Ann. 550, page 553: “Such a doctrine would certainly create alarm and anxiety among those whose titles repose on the judgments of courts of justice. They are considered as muniments of title,.and are preserved
 
 in the permanent recoi-ds
 
 of the country,
 
 while the acts of ministerial officers who eweeute the process of the courts, are frequently preserved only on loose sheets of pa,per, constantly liable, to be lost or mislaid.”
 
 (Italics ours.)
 

 Our conclusion is that, under the presumption of omnia rite acta, the tutor ad hoc was cited, and that the evidence adduced by plaintiff is not sufficient to overcome this presumption.
 

 The judgment therefore rendered in the suit for specific performance is legal and valid, and is not subject to collateral attack by plaintiff in this case for want of citation to the tutor ad hoc.
 

 This judgment is final, is rendered by a court of competent jurisdiction, and is a permanent muniment of. title. It has remained intact and unquestioned for years. It decreed specific performance of the contract, after the favorable deliberations of a family meeting, legally convoked, approved by the undertutor, and duly homologated. It fixed the interests of the minors in the property; it ordered that the proceeds of sale, as to their interests, be deposited in the registry of the court, which was done; and the whole of these proceeds was received by the mother of the minors, and was duly receipted for by her as tutrix on January 22, 1922.
 

 Under the will of Octave Levert, the interests of his heirs in his estate were made subject to the usufruct in favor of their mother. Necessarily, this right of usufruct attached to
 
 *134
 
 the proceeds of the sale of the interests of the heirs in the property.
 

 The usufruct of money is an imperfect or quasi usufruct, and transfers to the usufructuary
 
 the ownership.
 
 R. O. O. arts. 534, 535. At the termination of the usufruct, the things 'consumed must be accounted, for. In the meantime, however, the mother of the minors had the right,
 
 as owner,
 
 to spend or dispose of the moneys subject to the usufruct at her pleasure. R. C. C. art. 549; Tutorship of Minor Heirs of Jones, 41 La. Ann. 620, 6 So. 180; Succession of Blancand, 48 La. Ann. 580, 19 So. 683.
 

 The minor heirs of Levert must look, therefore, to their mother for an accounting at the termination of the usufruct in her favor.
 

 As the judgment is legal and valid, and is the sole source of and authority for the sale to Isidore Jeffer, any asserted lack of authority on the part of the tutor ad hoc to delegate to Mrs. Levert, the widow, the power to transfer the minors’ interests relates rather to a defect in the method of putting into effect a logal and valid judgment than to any radical nullity inherent in the judgment itself.
 

 Plaintiff cites no authority to show that such defect is a radical nullity. In our opinion, the irregularity complained of is a relative nullity, for the reasons assigned, and is cured by the prescription of five years, which has been specially pleaded by defendant under Act No. 231 of 1932, amending article 3543 of the Civil Code. This act merely shortens the prescription of five years to two years, as to informalities growing out of any sale at public auction, unless minors' were part owners at the time of making it, and provides that, in such a case, “the prescription thereon shall accrue after five years from the date of public adjudication thereof.”
 

 Article 3543 of the Civil Code, prior to this amendment, read as follows:
 

 , “All informalities connected with or growing out of any public sale, made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale,
 
 after the lapse of five years
 
 from the time of making it,
 
 whether againpt minors,
 
 married women or interdicted persons.” (Italics ours.)
 

 Defendant acquired the property herein involved from one Marx Jeffer on March 14, 1927, by act passed before a notary public; and Marx Jeffer acquired the property on the same day as adjudieatee at a public sale made by I. B. Rennyson, a duly licensed auctioneer, in the proceedings entitled “Marx Jeffer versus Dan D. Cossouto, No. 165,962 of the docket of the Civil District Court for the Parish of Orleans,” and this adjudication was confirmed on the same day before E. S. Spiro, notary public.
 

 The present suit was not brought by plaintiff attacking defendant’s title to this property until June 15, 1933, or more than five years after the acquisition by Marx Jeffer, as adjudieatee at public auction, the immediate vendor of defendant.
 

 Defendant, unquestionably, claims title under the public adjudication made to Marx Jeffer as a link in the chain of title, and, without doubt, can plead the prescription of five years against plaintiff’s attack upon defendant’s title, which emanates, through mesne conveyances, from the original judgment in the suit for specific performance.
 

 
 *136
 
 The plea of prescription of five years, tendered by defendant, is good, and should be sustained.
 

 The judgment of the lower court rescinded the bond for deed, and awarded plaintiff the sum of $5,248, paid by him on the contract at the time of its execution, with legal interest from judicial demand until paid and all costs of suit.
 

 For the reasons assigned, the judgment appealed from is annulled and reversed.
 

 It is now ordered that the plea of prescription of five years tendered by.defendant be sustained, and that plaintiff’s demand be rejected and plaintiff’s suit dismissed at his costa '